UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PENNY GARDNER (*f/k/a* Rodriguez),<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ISRAEL RODRIGUEZ and STATE OF WASHINGTON, acting through and d/b/a various State Agencies,<br><br>　　　　　Defendants. | NO. 2:22-CV-0144-TOR<br><br>ORDER GRANTING PROTECTIVE ORDER |

BEFORE THE COURT is Defendant's Motion for a Protective Order (ECF No. 63). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, the protective order is granted in part and denied in part.

## BACKGROUND

This motion for a protective order arises out of a dispute between Plaintiff Penny Gardner (neé Rodriguez) and her ex-husband and former colleague,

ORDER GRANTING PROTECTIVE ORDER ~ 1

1  Defendant Israel Rodriguez.  Plaintiff is suing Defendant for his purported
2  mismanagement of the pediatric care facility, Weeping Ridge North, LLC (WRN)
3  which they formerly owned and operated together.  In her second amended
4  complaint, Plaintiff charges Defendant with (1) breach of fiduciary duty, unjust
5  enrichment, and constructive fraud; (2) interference with a business expectancy;
6  (3) fraudulent concealment; (4) intentional infliction of emotional distress; and (5)
7  outrage.  See ECF No. 58 at 50-56, ¶¶ 4.1-4.35

8    According to Plaintiff, Defendant Rodriguez and various Washington State
9  licensing agencies colluded to extinguish the licensure of WRN in exchange for
10 Defendant Rodriguez receiving lucrative State adult care contracts.  See ECF No.
11 70 at 5.  WRN's license was suspended on July 5, 2019, and formally revoked on
12 June 25, 2020, apparently without any advance notice to Gardner despite her equal
13 ownership status.  ECF No. 58 at 38-40.  Plaintiff also alleges that Defendants
14 entered an illegal agreement in December 2021 which proscribed her from seeking
15 any future licenses from the Department of Children, Youth, and Families without
16 her participation or approval.  Id. at 42, ¶¶ 2.138-2.142.

17                        **DISCUSSION**

18    Defendant objects to four of Plaintiff's discovery requests, which ask him to
19 produce: (1) all licenses issued to him by the State of Washington from 2020
20 through the present, including any licenses issued to his businesses since July 5,

2019; (2) all tax returns for the foregoing entities from 2020 through the present date; (3) all profit and loss statements for the foregoing entities through 2023; and (4) all personal income tax returns filed since July 5, 2019, including all K1s, W-2s and 1099 forms. ECF No. 64 at 65-69. The Court grants Defendant's motion for a protective order as to requests for production (1) through (4).

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts consider whether information is relevant and proportional by looking to "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Recipients of a discovery request may move for a protective order to block the disclosure of evidence or narrow the scope of information sought. FED. R. CIV. P. 26(c)(1). A protective order will issue for good cause, including to avoid "annoyance, embarrassment, oppression, or undue burden or expense." *Id*. The burden of establishing good cause rests with the movant seeking the protective order, who must establish that specific prejudice or harm will result in the absence of protective measures. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir.

ORDER GRANTING PROTECTIVE ORDER ~ 3

2003); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). The mere fact that information would be inadmissible at trial does not remove it from the scope of discovery. FED. R. CIV. P. 26(b)(1). Additionally, the movant must certify that it attempted to confer in good faith with affected parties prior to seeking judicial intervention. FED. R. CIV. P. 26(c)(1). If the motion is warranted, the Court may forbid discovery, limit the scope of discovery, or specify the terms and procedures of disclosure. FED. R. CIV. P. 26(c)(1)(A)-(H).

Although Defendant Rodriguez did not explicitly certify that the parties attempted to confer with another, the record shows that the parties attempted to come to an independent resolution of their issues before seeking court intervention. *See* ECF No. 64 at 76-79 (e-mail chain discussing the issues).

Plaintiff makes a second, preliminary argument that the Court should not consider the merits of Defendant's motion because Defendant failed to attach a proposed protective order. ECF No. 70 at 2. Although it may be customary for parties to supply a proposed order for the Court to adopt, nothing in the Federal Rules of Civil Procedure or in our local rules requires advance submission of a disputed proposed protective order. The Court therefore turns to the merits of Defendant's motion.

Plaintiff's first request for production asks Defendant to propound:

> [A]ll licenses issued to you and any other individual with whom you were or are working, by the State of Washington to operate a health

ORDER GRANTING PROTECTIVE ORDER ~ 4

care facility in the State of Washington for each year of 2020 through the present, including any licenses issued to any business, LLC, partnership, joint venture, or corporate interest of any kind, in which you have an ownership, dividend, distribution or income interest of any kind, since the State suspended the license for [WRN] on July 5, 2019, [and] [later] revoked that license. This is to include, but is not limited to, any licensing for the following known entities . . . :

    a) Weeping Ridge LLC;
    b) Weeping Ridge Home Health, LLC;
    c) Weeping Ridge Lake Spokane, LLC;
    d) Weeping Ridge West, LLC;
    e) Weeping Ridge West, Inc.;
    f) Weeping Ridge Estate Adult Family Home, Inc.;
    g) Grande Manor Care, Inc.;
    h) IPRI, LLC; and
    i) Any other business in which you have an ownership.

ECF No. 64 at 65.

Defendant argues this request is overbroad because the only entity relevant to this action is WRN and the other listed entities were awarded to him during the dissolution process, rather than through his alleged collusion with the State. ECF No. 63 at 8. Additionally, he objects that the information sought goes beyond the scope of Plaintiff's suit, which he believes relates to conduct prior to WRN's suspension. ECF No. 64 at 66. Plaintiff broadly responds that the information sought is covered because it pertains to the "economic deal-making between the Defendant State and Defendant Rodriguez . . . in exchange for the Defendant State giving Defendant Rodriguez hundreds of thousands of dollars in adult care contracts." ECF No. 70 at 5.

ORDER GRANTING PROTECTIVE ORDER ~ 5

The Court grants Defendant's motion as to this first request for production. In fact, many of the listed entities existed prior to the revocation of WRN's license. *See, e.g.*, ECF No. 64 at 9-10, ¶ 22.1.01, ¶¶ 22.1.03-07. The second amended complaint does not allege that the State conditioned license approval for new facilities on Defendant Rodriguez's agreement to enter into a settlement with the State. As such, the Court finds that Plaintiff's first request for production is irrelevant and unduly burdensome.

Plaintiff's second and third requests for production focus on the pecuniary gain Defendant obtained through his purported conspiracy with the State:

> **Request for Production No. 2:** Produce tax returns for each year of 2020 through the present for all of the foregoing entities in which you have an ownership interest and which have been licensed by the Defendant State of Washington since the State suspended the license for [WRN] on July 5, 2019, then revoked that license.
>
> . . .
>
> **Request for Production No. 3:** Produce year-end profit and loss statements for each business and each business entity in which you have an ownership interest, including the 2023 year-to-date profit and loss.

ECF No. 64 at 66-67.

Defendant objects to these requests as beyond the scope of discovery in this matter, arguing that Plaintiff intends to use the information for the ulterior purpose of acquiring financial support for her separate divorce action currently pending before the state court of appeals. ECF Nos. 63 at 9-10; 64 at 66; *see also* ECF No.

ORDER GRANTING PROTECTIVE ORDER ~ 6

64 at 55, ¶ 31 (Plaintiff indicating in state court affidavit of financial need that this action might result in the production of Defendant's "financial information and [ ] state contracts," which she believes will show that "he is financially flourishing with our adult care properties."). Defendant also argues that the contracts in issue were awarded by the superior court as part of the divorce decree, not by the State. ECF No. 71 at 7.

The Court finds that the financial information sought is not relevant to Plaintiff's claims. Plaintiff alleges that the State colluded with Defendant by "transferring State contracts and income to him through [his] vulnerable person facilities" in exchange for relinquishing WRN's licensure. ECF No. 58 at 44, ¶ 2.151. Defendant presses that this allegation is false. The financial information sought is not related to Plaintiff's allegation that the State promised to support Defendant's businesses as *quid pro quo* in exchange for the revocation of WRN's license. The superior court awarded Defendant the above-listed facilities in its divorce decree.

Last is Plaintiff's fourth request for production, which asks Defendant to produce his "personal income tax returns, including all K-1s, W-2s and 1099 forms filed since July 5, 2019." ECF No. 64 at 67. Defendant argues that this information is irrelevant, and the Court agrees. Defendant's personal financial information is only tenuously related to the claim that the State offered financial

ORDER GRANTING PROTECTIVE ORDER ~ 7

assistance to his businesses *quid pro quo*, and seems more relevant to Plaintiff's state application of financial need. Accordingly, Defendant's motion as to Plaintiff's fourth request for production is granted.

Both parties seek an award of attorney's fees. ECF Nos. 63 at 11; 70 at 10-11; *see also* FED. R. CIV. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court may . . ., after giving an opportunity to be heard, apportion the reasonable expenses for the motion."). However, because all positions were justifiable, each party will bear their own litigation expenses in raising and defending against this motion.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant Rodriguez's motion for a protective order (ECF No. 63) is **GRANTED** as to Requests for Production Nos. 1 through 4.

2. The Court denies the award of attorney fees to either party.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED November 17, 2023.



THOMAS O. RICE
United States District Judge

ORDER GRANTING PROTECTIVE ORDER ~ 8